1    SAMUEL J. REED DIPPO, State Bar No. 310643
     WILSON SONSINI GOODRICH & ROSATI
2    Professional Corporation
     650 Page Mill Road
3    Palo Alto, CA 94304-1050
     Telephone:  (650) 493-9300
4    Facsimile:   (650) 565-5100
     Email:  sreeddippo@wsgr.com
5

6    BRIAN M. WILLEN (admitted *pro hac vice*)
     WILSON SONSINI GOODRICH & ROSATI
     Professional Corporation
7    1301 Avenue of the Americas
     40th Floor
8    New York, NY 10019-6022
     Telephone:  (212) 999-5800
9    Facsimile:   (212) 999-5899
     Email:  bwillen@wsgr.com
10

11    *Attorneys for Defendants*
     *YouTube, LLC and Google LLC*

12              UNITED STATES DISTRICT COURT

13           NORTHERN DISTRICT OF CALIFORNIA

14               OAKLAND DIVISION

15    DAVID SEAMAN,               )    CASE NO.:  4:19-cv-01903-SBA
                          )
16           Plaintiff,            )    **MOTION TO DISMISS PURSUANT**
                          )    **TO FEDERAL RULE OF CIVIL**
17        v.                    )    **PROCEDURE 12(b)(6)**
                          )
18    YOUTUBE, LLC, et al.,        )
                          )    Judge:  Hon. Saundra Brown Armstrong
19                       )
          Defendants.        )    Hearing Date:  August 14, 2019
20                       )    Time:         2:00 p.m.
                          )
21    _____ )

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ...................................................................................... 1

STATEMENT OF ISSUES (CIVIL L.R. 7-4(A)(3)) ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 1

BACKGROUND ........................................................................................................................... 1

ARGUMENT ................................................................................................................................. 3

I.       PLAINTIFF FAILS TO STATE A VIABLE CAUSE OF ACTION ............................... 3

      A.       Plaintiff Cannot Assert Constitutional Claims Against YouTube ......................... 3

      B.       Plaintiff's Claim Under the Telecommunications Act Fails .................................. 6

      C.       Plaintiff's State Law Claims Fail As A Matter of Law ........................................... 7

                 1.       Plaintiff Cannot Invoke Virginia Law ..................................................... 7

                 2.       Plaintiff's Claim of Defamation Per Se Fails as a Matter of Law ............... 8

                 3.       Plaintiff's Breach of Contract Claim Fails ................................................. 9

II.       PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE THEY ARE BARRED BY FEDERAL LAW ...................................................................................... 11

      A.       Plaintiff's Claims Are Barred by the First Amendment ....................................... 11

      B.       Plaintiff's Claims Are Barred by Section 230 of the CDA ................................... 12

CONCLUSION ............................................................................................................................ 15

1

## TABLE OF AUTHORITIES

2

### CASES

3

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
    526 U.S. 40 (1999) ............................................................................ 7

4

*Am. Online, Inc. v. GreatDeals.Net*,
    49 F. Supp. 2d 851 (E.D. Va. 1999) ................................................ 6

5

6

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*,
    571 U.S. 49 (2013) ....................................................................... 7, 8

7

*Barnes v. Yahoo!, Inc.*,
    570 F.3d 1096 (9th Cir. 2009) ........................................... 13, 14, 15

8

9

*Bartholomew v. YouTube, LLC*,
    17 Cal. App. 5th 1217 (2017) .......................................................... 9

10

*Batzel v. Smith*,
    333 F.3d 1018 (9th Cir. 2003) ...................................................... 13

11

12

*Bennett v. Google, LLC*,
    882 F.3d 1163 (D.C. Cir. 2018) ............................................... 13, 14

13

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n.*,
    531 U.S. 288 (2001) ........................................................................ 4

14

15

*Brunette v. Humane Society of Ventura County*,
    294 F. 3d 1205 (9th Cir. 2002) ....................................................... 5

16

*Cabesuela v. Browning-Ferris Indus. of California, Inc.*,
    68 Cal. App. 4th 101 (1998) ........................................................... 9

17

18

*Cannon v. Wells Fargo Bank N.A.*,
    917 F. Supp. 2d 1025 (N.D. Cal. 2013) .......................................... 8

19

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
    2 Cal. 4th 342 (1992) .................................................................... 10

20

21

*Casterlow-Bey v. Google Internet Search Engine Co.*,
    No. 3:17-cv-05621-RBL-JRC, 2017 WL 6876215
    (W.D. Wash. Sept. 26, 2017) .......................................................... 4

22

23

*Darnaa, LLC v. Google Inc.*,
    236 F. Supp. 3d 1116 (N.D. Cal. 2017),
    *aff'd*, --- F. App'x ----, 2018 WL 6131133 (9th Cir. Nov. 21, 2018) .............................. 11

24

25

*Davison v. Randall*,
    912 F.3d 666 (4th Cir. 2019) .......................................................... 5

26

*DeBauche v. Trani*,
    191 F.3d 499 (4th Cir. 1999) .......................................................... 4

27

28

*Denver Area Educ. Telecomms Consortium, Inc. v. FCC*,
        518 U.S. 727 (1996) (plurality opinion) ........................................................................ 12

*Ebeid v. Facebook, Inc.*,
        No. 18-cv-07030-PJH, 2019 WL 2059662 (N.D. Cal. May 9, 2019) ............................... 3

*Elliott v. Commonwealth*,
        593 S.E.2d 263 (Va. 2004) ............................................................................................... 5

*e-ventures Worldwide, LLC v. Google, Inc.*,
        No. 2:14-cv-646-FtM-PAM-CM, 2017 WL 2210029 (M.D. Fla. 2017) ................... 11, 12

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
        521 F.3d 1157 (9th Cir. 2008) (en banc) ............................................................ 13, 14, 15

*Falkowski v. Imation Corp.*,
        132 Cal. App. 4th 499 (2005) .......................................................................................... 10

*Flagg Bros., Inc. v. Brooks*,
        436 U.S. 149 (1978) .......................................................................................................... 4

*Florer v. Congregation Pidyon Shevuyim, N.A.*,
        639 F.3d 916 (9th Cir. 2011) ............................................................................................. 4

*Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*,
        209 Cal. App. 4th 1118 (2012) ....................................................................................... 10

*Freedom Watch, Inc. v. Google, Inc.*,
        368 F. Supp. 3d 30 (D.D.C. 2019) ................................................................................ 3, 4

*Goddard v. Google, Inc.*,
        640 F. Supp. 2d 1193 (N.D. Cal. 2009) .......................................................................... 13

*Gonzalez v. Google, Inc.*,
        282 F. Supp. 3d 1150 (N.D. Cal. 2017) .......................................................................... 14

*Green v. Am. Online (AOL)*,
        318 F.3d 465 (3d Cir. 2003) .............................................................................................. 3

*Howard v. Am. Online, Inc.*,
        208 F.3d 741 (9th Cir. 2000) .......................................................................................... 3, 6

*Hudgens v. NLRB*,
        424 U.S. 507 (1976) .......................................................................................................... 3

*Hui v. Sturbaum*,
        222 Cal. App. 4th 1109 (2014) .......................................................................................... 8

*Hurtado v. Superior Court*,
        11 Cal. 3d 574 (1974) ........................................................................................................ 8

*Johnson v. Twitter, Inc.*,
        No. 18CECG00078 (Cal. Super. Ct. June 6, 2018) ...................................................... 4, 5

*Keilholtz v. Lennox Hearth Prod. Inc.*,
        268 F.R.D. 330 (N.D. Cal. 2010) ...................................................................................... 8

*Key v. Robertson*,
    626 F. Supp. 2d 566 (E.D. Va. 2009) ........................................................................ 5

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) ................................................................................. 14

*Kinderstart.com, LLC v. Google, Inc.*,
    No. C 06-2057 JF (RS), 2007 WL 831806 (N.D. Cal. Mar. 16, 2007) ............................. 5

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014) .............................................................................. 14

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ................................................................................. 1

*Knight First Amendment Inst. at Columbia Univ. v. Trump*,
    302 F. Supp. 3d 541 (S.D.N.Y. 2018) ....................................................................... 5

*Lancaster v. Alphabet*, Inc.,
    No. 15-cv-05299-HSG, 2016 WL 3648608 (July 8, 2016) ................................ 13, 14, 15

*Langdon v. Google, Inc.*,
    474 F. Supp. 2d 622 (D. Del. 2007) ...................................................................... 4, 12

*Lewis v. YouTube, LLC*,
    244 Cal. App. 4th 118 (2015) .............................................................................. 10, 11

*Lloyd Corp. v. Tanner*,
    407 U.S. 551 (1972) .............................................................................................. 3

*McIntyre v. Ohio Elections Comm'n*,
    514 U.S. 334 (1995) ............................................................................................. 12

*Miami Herald Publ'g Co. v. Tornillo*,
    418 U.S. 241 (1974) .......................................................................................... 11, 12

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
    545 U.S. 967 (2005) .............................................................................................. 6

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
    591 F.3d 250 (4th Cir. 2009) ................................................................................. 13

*Palm Springs Tennis Club v. Rangel*,
    73 Cal. App. 4th 1 (1999) ..................................................................................... 8, 9

*Prager Univ. v. Google LLC*,
    No. 17-CV-06064-LHK, 2018 WL 1471939 (N.D. Cal. Mar. 26, 2018), .................. 3, 4, 5

*Quigley v. Yelp, Inc.*,
    No. 17-cv-03771-RS, ECF No. 69 (N.D. Cal. Jan. 22, 2018) ....................................... 4

*Rendell-Baker v. Kohn*,
    457 U.S. 830 (1982) .............................................................................................. 4

*Rosenfeld v. JPMorgan Chase Bank, N.A.*,
    732 F. Supp. 2d 952 (N.D. Cal. 2010) ..................................................................... 11

*Sikhs for Justice "SFJ," Inc. v. Facebook, Inc.*,
    144 F. Supp. 3d 1088 (N.D. Cal. 2016) ................................................*passim*

*Song Fi Inc. v. Google, Inc.*,
    108 F. Supp. 3d 876 (N.D. Cal. 2015) ...................................................... 8, 9, 10

*Turner Broad. Sys., Inc. v. FCC*,
    512 U.S. 622 (1994) ............................................................................... 11

*U.S. Telecom Ass'n v. FCC*,
    855 F.3d 381 (D.C. Cir. 2017) .................................................................. 7

*Villegas v. Gilroy Garlic Festival Ass'n*,
    541 F.3d 950 (9th Cir. 2008)..................................................................... 4

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997)................................................................ 13,14

*Zhang v. Baidu.com, Inc.*,
    10 F. Supp. 3d 433 (S.D.N.Y. 2014) .................................................. 11, 12

**STATUTES**

28 U.S.C. § 1404 ......................................................................................... 2

42 U.S.C. § 1983 ......................................................................................... 7

47 U.S.C. § 153 ........................................................................................... 6

47 U.S.C. § 202 ........................................................................................... 6

47 U.S.C. § 202(a) ....................................................................................... 2

47 U.S.C. § 206 ....................................................................................... 2, 6

47 U.S.C. § 230 ..................................................................................*passim*

Virginia Code Ann. 50.1-200 (Virginia Consumer Protection Act) ............................. 2

**RULES**

Fed. R. Civ. P. 12(b)(6) ........................................................................... 1, 2

**MISCELLANEOUS**

*22 FCC Rcd* (Wireless Broadband Order), 22 F.C.C.R. 5901 (Mar. 23, 2007)............................. 6

Protecting and Promoting the Open Internet, 80 Fed. Reg. 19,738 (Apr. 13, 2015)...................... 7

Prosser & Keaton, Torts (5th ed. 1984) § 113 ............................................................ 9

U.S. Const. amend. I ..................................................................................*passim*

Virginia Const. Article I, § 12 ..................................................................... 2, 5

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on August 14, 2019 at 2:00 p.m., before The Honorable Saundra Brown Armstrong, United States District Court, Oakland Courthouse, 1301 Clay Street, Oakland, CA 94612, Defendants Google LLC ("Google") and YouTube, LLC ("YouTube") will move to dismiss Plaintiff David Seaman's ("Plaintiff") complaint pursuant to Fed. R. Civ. P. 12(b)(6).

**STATEMENT OF ISSUES (CIVIL L.R. 7-4(a)(3))**

1.     Does Plaintiff's complaint state a claim for which relief can be granted?

2.     Are Plaintiff's claims barred as a matter of law by the First Amendment and Section 230 of the Communications Decency Act?

**MEMORANDUM OF POINTS AND AUTHORITIES**

In this case, Plaintiff seeks to hold YouTube liable for its judgments about what videos may—or may not—appear on its online service. Plaintiff thereby seeks to transform YouTube, a private service provider, into a public forum regulated by the same constitutional standards that apply to the government. This case was originally filed in the wrong forum in violation of the parties' agreement. Now that it is in the proper court, Plaintiff's complaint should be dismissed because it fails to state a viable claim and is barred by federal law.

**BACKGROUND**

Google owns and operates YouTube, a popular online service for sharing videos and related content. ECF No. 1, Compl. ¶¶ 15, 18, 23, 26-27. Every day, YouTube users upload thousands of new hours of video and view over a billion hours of content on the service. Compl. ¶ 23. YouTube allows users to access and use its service provided they agree to and adhere to the YouTube Terms of Service and the YouTube Community Guidelines.[1] The Terms provide that YouTube "reserves the right to decide whether Content violates [its] Terms of Service" and YouTube "reserves the right to remove Content." ECF No. 15-1, Adam Decl. Ex. 1 §§ 6.F., 7.B.

---

[1] The Court is free to consider on a motion to dismiss documents that are incorporated by reference in Plaintiff's complaint, including YouTube's Terms of Service and Community Guidelines. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

1    The Community Guidelines set out various "common-sense rules" about the kind of content that

2    is not allowed on YouTube. That includes, among other things: "hateful content," "harassment

3    and cyberbullying," "scams," violent or graphic material, sexually explicit content, "predatory

4    behavior, stalking, threats, harassment, intimidation, invading privacy, revealing other people's

5    personal information," and "harmful or dangerous content." Compl. ¶ 44; Adam Decl. Ex. 3.

6         Plaintiff is a citizen of the District of Columbia. Compl. ¶ 13. He describes himself as a

7    journalist covering one topic: "pedophilia, human trafficking and 'Pizzagate.'" Compl. ¶¶ 1, 13.

8    Plaintiff created his channel on YouTube in 2008, which involved him agreeing to the Terms of

9    Service. Compl. ¶ 1; Adam Decl. ¶¶ 4-5. Over the years, Plaintiff created hundreds of videos,

10   which he uploaded to his YouTube channel. Compl. ¶¶ 1-3. In February 2018, YouTube

11   suspended—and subsequently terminated—Plaintiff's channel for multiple violations of

12   YouTube's Community Guidelines, including for harassment. Compl. ¶ 6. Plaintiff now contests

13   YouTube's judgments, asserting that his videos did not violate YouTube's content rules. Compl.

14   ¶ 8. He claims instead that YouTube and Google are censoring videos based on what they deem

15   to be "politically correct." Compl. ¶¶ 11, 41.

16        Plaintiff originally filed this case in the Eastern District of Virginia. ECF No. 1

17   (originally filed as Case No. 3:18-cv-00833-HEH) (Compl. filed Dec. 3, 2018). His complaint

18   asserts causes of action for alleged violations of the First Amendment of the U.S. Constitution

19   and Article I, § 12 of the Virginia Constitution, for "common carrier discrimination" under the

20   federal Telecommunications Act, 47 U.S.C. §§ 202(a) and 206, the Virginia Consumer

21   Protection Act ("VCPA"), and claims for defamation *per se* and breach of contract under state

22   law. Because the governing YouTube Terms of Service agreement required that claims proceed

23   only in California and under California law (Adam Decl. Ex. 1 § 14), YouTube filed a motion to

24   transfer the case to this Court pursuant to 28 U.S.C. § 1404, along with a motion to dismiss under

25   Rule 12(b)(6). In response to YouTube's motion, Plaintiff expressly abandoned his VCPA claim.

26   ECF No. 18 at 21. On April 5, 2019, Judge Henry Hudson of the Eastern District of Virginia

27   granted YouTube's motion to transfer. ECF No. 20. YouTube now renews its motion to dismiss

28   in this Court.

1

**ARGUMENT**

Plaintiff's Complaint should be dismissed for two overarching reasons: first, Plaintiff fails to state a viable claim for any of his causes of action; second, most of Plaintiff's claims are barred by federal law, both by the First Amendment and Section 230 of the Communications Decency Act.

## I.   PLAINTIFF FAILS TO STATE A VIABLE CAUSE OF ACTION

### A.   Plaintiff Cannot Assert Constitutional Claims Against YouTube

Plaintiff seeks to hold YouTube liable for infringing his right to free speech under the First Amendment and the Virginia Constitution. But these claims fail for a simple reason: YouTube is a private service provider, not a state actor. "It is, of course, a commonplace that the constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state." *Hudgens v. NLRB*, 424 U.S. 507, 513 (1976); *see also Lloyd Corp. v. Tanner*, 407 U.S. 551, 567 (1972) ("[I]t must be remembered that the First and Fourteenth Amendments safeguard the rights of free speech and assembly by limitations on *state* action, not on action by the owner of private property used nondiscriminatorily for private purposes only.").

Recognizing this bedrock principle, an unbroken line of cases has held that the First Amendment does not regulate private online services—and rejected claims indistinguishable from those that Plaintiff advances here. *See, e.g.*, *Howard v. Am. Online, Inc.*, 208 F.3d 741, 754 (9th Cir. 2000) (affirming dismissal of First Amendment claims against AOL where allegations that AOL was a "quasi-public utility" were "insufficient to hold that AOL is an 'instrument or agent' of the government"); *Green v. Am. Online (AOL)*, 318 F.3d 465, 472 (3d Cir. 2003) ("AOL is a private, for profit company and is not subject to constitutional free speech guarantees."); *Prager Univ. v. Google LLC*, No. 17-CV-06064-LHK, 2018 WL 1471939, at *8 (N.D. Cal. Mar. 26, 2018) (Google and YouTube are not "state actors that must regulate the content on their privately created website in accordance with the strictures of the First Amendment"), *appeal docketed*, No. 18-15712 (9th Cir. Apr. 24, 2018).[2]

---

[2] *See also, e.g.*, *Ebeid v. Facebook, Inc.*, No. 18-cv-07030-PJH, 2019 WL 2059662, at *6 (N.D. Cal. May 9, 2019) (dismissing constitutional claim against Facebook for failure to establish that Facebook is a state actor); *Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d

(continued...)

1    Plaintiff cannot escape this conclusion with the bare assertion that YouTube acted "under

2    color of state law." Compl. ¶ 47. Private parties may only be treated as state actors if—and only

3    if— there is "such a 'close nexus between the State and the challenged action' that seemingly

4    private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad. v. Tenn.*

5    *Secondary Sch. Athletic Ass'n.*, 531 U.S. 288, 295 (2001) (citation omitted); *accord Villegas v.*

6    *Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 955 (9th Cir. 2008). Plaintiff tries to claim such a

7    nexus by alleging that YouTube engages in an "exclusively and traditionally public function by

8    regulating free speech within a public forum." Compl. ¶¶ 47, 58. Under the public-function test,

9    however, private conduct may be treated as state action only if the right to undertake the conduct

10   at issue has been both (1) delegated by the government to the private party and (2) "traditionally

11   the *exclusive* prerogative of the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) (citation

12   omitted); *accord Brentwood*, 531 U.S. at 296; *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639

13   F.3d 916, 924-25 (9th Cir. 2011). There is nothing remotely like that here.

14   Plaintiff does not allege that YouTube, in removing Plaintiff's videos and channel, acted

15   pursuant to any delegation by the government. Nor can Plaintiff show that YouTube, in regulating

16   its private platform, was engaged in a *traditionally and exclusively* governmental function. As the

17   Supreme Court has explained, "[w]hile many functions have been traditionally performed by

18   governments, very few have been 'exclusively reserved to the State.'" *Flagg Bros., Inc. v. Brooks*,

19   436 U.S. 149, 158 (1978). "This category is very narrow." *DeBauche v. Trani*, 191 F.3d 499, 508

20   (4th Cir. 1999). Operating a private online service that hosts video content does not come within

21   it. *See, e.g.*, *Prager*, 2018 WL 1471939, at *8; *Johnson v. Twitter, Inc.*, No. 18CECG00078 (Cal.

22   _____

23   (...continued from previous page)
     30, 40-41 (D.D.C. 2019) (dismissing First Amendment claims against Google and other
     defendants because plaintiff failed to allege state action or how conduct by online platforms

24   could be treated as action by government); *Quigley v. Yelp, Inc.*, No. 17-cv-03771-RS, ECF No.
     69 (N.D. Cal. Jan. 22, 2018) (dismissing constitutional claims against Twitter and other

25   defendants because "he cannot show that any of the defendants are state actors"); *Langdon v.
     Google, Inc.*, 474 F. Supp. 2d, 622, 631-32 (D. Del. 2007) (holding that Google is a private entity

26   "not subject to constitutional free speech guarantees"); *Casterlow-Bey v. Google Internet Search
     Engine Co.*, No. 3:17-cv-05621-RBL-JRC, 2017 WL 6876215, at *1 (W.D. Wash. Sept. 26,

27   2017) (holding that Google "is not a state actor and so is not liable under § 1983"), *report and
     recommendation adopted*, No. 3:17-cv-05621-RBL-JRC, 2017 WL 6882978 (W.D. Wash. Oct.

28   23, 2017).

Super. Ct. June 6, 2018); *Kinderstart.com, LLC v. Google, Inc.*, No. C 06-2057 JF (RS), 2007 WL 831806, at *13-15 (N.D. Cal. Mar. 16, 2007). Because YouTube does not stand in the shoes of the state when it regulates the content on its platform, Plaintiff's constitutional claims must be dismissed. *Accord Brunette v. Humane Society of Ventura County*, 294 F. 3d 1205, 1214 (9th Cir. 2002).

Plaintiff cannot change that result by merely labelling YouTube a "public forum." *E.g.*, Compl. ¶¶ 9, 56, 58. In the First Amendment context, the term "public forum" refers to property that is controlled by the government. "[W]hat renders the fora 'public' . . . is that *the government has made the space available . . . for 'expressive public conduct' or 'expressive activity.'" Davison v. Randall*, 912 F.3d 666, 681 (4th Cir. 2019) (emphasis added); *see also id.* at 683 ("private property, whether tangible or intangible, constituted a public forum when, for example, *the government* retained substantial control over the property under regulation or by contract" (emphasis added)); *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 302 F. Supp. 3d 541, 566 (S.D.N.Y. 2018), *appeal docketed*, No. 18-1691 (2d Cir. June 5, 2018) (same). Plaintiff does not allege that YouTube's platform is or ever was government owned or controlled. And neither YouTube's wide availability nor its general commitment to encouraging creative expression transforms it into a public forum constrained by the same First Amendment rules that limit the government. *See Prager*, 2018 WL 1471939, at *8 (Google and YouTube are not state actors "merely because they hold out and operate their private property as a forum for expression of diverse points of view").

The same principles doom Plaintiff's claim under Virginia's constitution—even assuming it were proper for Plaintiff to invoke Virginia law in this case (*see infra* pp. 7-8). "Article I, Section 12 of the Constitution of Virginia is coextensive with the free speech provisions of the federal First Amendment." *Elliott v. Commonwealth*, 593 S.E.2d 263, 269 (Va. 2004); *see also Key v. Robertson*, 626 F. Supp. 2d 566, 583 (E.D. Va. 2009) (holding that Article I, Section 12 of Virginia's constitution only applies to government or state action). In short, any constitutional claim in this case fails as a matter of law for lack of state action.

1

### B.  Plaintiff's Claim Under the Telecommunications Act Fails

2      Title II of the Telecommunications Act makes it unlawful for a "common carrier" to make

3  unjust or unreasonable discriminations in providing their communication services. 47 U.S.C.

4  § 202; *see also id.* § 206. Plaintiff's claim under this provision fails because YouTube is not a

5  common carrier. *See, e.g.*, *Howard v. Am. Online Inc.*, 208 F.3d 741, 753 (9th Cir. 2000) ("AOL is

6  not a common carrier under the Communications Act"); *Am. Online, Inc. v. GreatDeals.Net*, 49 F.

7  Supp. 2d 851, 855-57 (E.D. Va. 1999) (holding that AOL is not subject to the anti-discrimination

8  provisions of the Communications Act because it is not a common carrier).

9      The Telecommunications Act "regulates telecommunications carriers, but not information-

10  service providers, as common carriers." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet*

11  *Servs.*, 545 U.S. 967, 975 (2005).[3] YouTube is an "information service" that is not subject to

12  common carrier regulation. An "information service" is "the offering of a capability for

13  generating, acquiring, storing, transforming, processing, retrieving, utilizing, or making available

14  information via telecommunications." 47 U.S.C. § 153(24). Such a service "provides a capability

15  for manipulating and storing information." *Brand X*, 545 U.S. at 978. That describes YouTube to a

16  tee, as the Complaint itself makes clear. "YouTube is a leading online platform for creating,

17  developing, uploading, searching for, viewing and sharing videos." Compl. ¶ 15. YouTube enables

18  users to generate, store, retrieve, and make available information via telecommunications. And,

19  unlike a common carrier, YouTube expressly regulates the content on its service subject to a range

20  of content-based rules. Compl. ¶¶ 30-35; Adam Decl. Ex. 1 §§ 6.E., 7.B.[4]

21

22      [3] The statute defines the term "common carrier" as "any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or interstate or foreign radio transmission of energy." 47 U.S.C. § 153(11).

23

24      [4] The Complaint mentions in passing Google's operation of Google Fiber and Google Project Fi, Compl. ¶ 68, but the operation of those networks has nothing to do with the claims in this case, nor could those references be sufficient to convert Google as a whole (much less YouTube)

25  into a common carrier. *See* 47 U.S.C. § 153(51) ("A telecommunications carrier shall be treated as a common carrier under this [Act] only to the extent that it is engaged in providing

26  telecommunications services . . . ."); *see also  22 FCC Rcd* (Wireless Broadband Order), 22 F.C.C.R. 5901, 5919 ¶ 50 (Mar. 23, 2007) (concluding that a "service provider is to be treated as

27  a common carrier for the telecommunications services it provides, but it cannot be treated as a common carrier with respect to other, non-telecommunications services it may offer, including

28  information services").

1    This conclusion is confirmed by the FCC's authoritative interpretation of the statute. In

2    2015, the FCC reclassified broadband Internet access service ("BIAS") as a telecommunications

3    service subject to common carrier regulation. Protecting and Promoting the Open Internet,

4    80 Fed. Reg. 19,738 (Apr. 13, 2015). In so doing, the FCC drew a sharp distinction between

5    BIAS—"mass-market retail service by wire or radio that provides the capability to transmit data

6    to and receive data from all or substantially all Internet endpoints"—and "edge provider[s]," i.e.,

7    those individuals or entities that provide "any content, application, or service over the Internet."

8    *Id.* at 19,847. The Order makes clear that providers like Google and YouTube are within the

9    second category, which cannot, as a matter of law, be treated as common carriers. *Id.* at 19,790.

10   In upholding the FCC's 2015 Order, the D.C. Circuit explained that web platforms such as

11   Google and YouTube, "in contrast with broadband ISPs, *are not considered common carriers*

12   *that hold themselves out as affording neutral, indiscriminate access to their platform without any*

13   *editorial filtering.*" *U.S. Telecom Ass'n v. FCC*, 855 F.3d 381, 392 (D.C. Cir. 2017) (emphasis

14   added). Plaintiff's claim for common carrier discrimination should be dismissed with prejudice.[5]

15       **C.    Plaintiff's State Law Claims Fail As A Matter of Law**

16       Plaintiff's state-law claims are equally infirm. As an initial matter, there is no basis for

17   Plaintiff to invoke Virginia law as the basis for those claims. But whatever state's law the claims

18   arise under, they fail.

19           1.   Plaintiff Cannot Invoke Virginia Law

20       Plaintiff invokes Virginia law as the basis of his four state-law causes of action (though, as

21   discussed above, Plaintiff has now expressly abandoned his claim under VCPA). Compl. ¶¶ 72-97.

22   Even when this case was pending in Virginia, it was questionable for Plaintiff—a DC resident—to

23   rely on Virginia law, but now that this case has come to this Court based on the parties' forum-

24   selection agreement, there is no possible basis for doing so. *See Atl. Marine Const. Co. v. U.S.*

25   _____

26       [5] Plaintiff also purports to assert a common-carrier discrimination claim against YouTube
     under 42 U.S.C. § 1983. Compl. ¶ 65. As discussed in Part I.A., *supra*, however, YouTube is not
27   a state actor, did not act under color of law, and thus cannot be held liable under Section 1983.
     *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (Section 1983 "excludes from its
28   reach 'merely private conduct, no matter how discriminatory or wrongful'" (citation omitted)).

_____

*Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 64-66 (2013) ("The court in the contractually selected venue should **not** apply the law of the transferor venue to which the parties waived their right.") (emphasis added). Instead, it is California law that this Court should apply. *Hurtado v. Superior Court*, 11 Cal. 3d 574, 581 (1974); *Keilholtz v. Lennox Hearth Prod. Inc.*, 268 F.R.D. 330, 340 (N.D. Cal. 2010) (party advocating for the application of foreign law bears the burden of showing that the foreign law should apply). That is especially so given that the Terms of Service agreement expressly provides that it "shall be governed by the internal substantive laws of the State of California, without respect to its conflict of laws principles." Adams Decl. Ex. 1, ¶ 14. For this reason alone, the court can dismiss Plaintiff's state law claims. *E.g., Song Fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 888 (N.D. Cal. 2015) (dismissing D.C. Consumer Protection Procedures Act claims where terms of service provided that California law governs dispute); *Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025, 1055 (N.D. Cal. 2013) (observing that court could dismiss claim brought under incorrect state law "on that basis alone").

2.   Plaintiff's Claim of Defamation Per Se Fails as a Matter of Law

But even if Plaintiff had relied on the correct body of law, his claims would fail.[6] Under California law, defamation requires "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." *Hui v. Sturbaum*, 222 Cal. App. 4th 1109, 1118 (2014). Here, because Plaintiff casts his claim as one for defamation per se, he must show that the publication had a natural tendency to injure. *Palm Springs Tennis Club v. Rangel*, 73 Cal. App. 4th 1, 5 (1999). Plaintiff's defamation claim relies on two different kinds of statements: (1) purportedly defamatory emails sent directly to him; (2) information posted on YouTube's website. Neither can support a claim.

*First*, the emails sent directly to Plaintiff are not defamatory because they were never published by YouTube. Plaintiff alleges that YouTube communicated with him in messages sent directly, and solely, to Plaintiff. Compl. ¶¶ 6-7. But it is black-letter law that statements made only to a plaintiff are not "published"—to give rise to a possible defamation claim, the statement must

---

[6] As YouTube explained in its original motion to dismiss, Plaintiff's claims also fail under Virginia law. ECF No. 15 pp. 16, 20-27.

be disseminated to a third party. *See Cabesuela v. Browning-Ferris Indus. of California, Inc.*, 68 Cal. App. 4th 101, 112 (1998) ("It is axiomatic that for defamatory matter to be actionable, it must be communicated, or 'published,' . . . to 'one other than the person defamed.'") (quoting Prosser & Keaton, Torts (5th ed. 1984) § 113, pp. 797–798).

*Second*, Plaintiff alleges that a single statement posted on YouTube's website was defamatory. That statement, in its entirety, reads: "This account has been terminated for a violation of YouTube's Terms of Service." Compl. ¶ 6. As a matter of law, however, such a statement cannot give rise to a viable claim of defamation per se. For a defamation per se claim, "defamatory meaning appears from the language itself without the necessity of explanation or the pleading of extrinsic facts." *Palm Springs Tennis Club*, 73 Cal. App. 4th at 6. There is nothing like that here. Indeed, California courts have found that nearly identical statements were **not**, and could not be defamatory as a matter of law. In *Bartholomew v. YouTube, LLC*, YouTube placed a message where plaintiff's video previously had been stating "[t]his video has been removed because its content violated YouTube's Terms of Service." 17 Cal. App. 5th 1217, 1228 (2017). The Court of Appeal held that this was not actionable defamation, because the statement was not defamatory either on its face or in light of YouTube's Community Guidelines. *Id.* at 929 (observing that an "accusation of a breach of contract is usually not defamatory in itself"); *see also Song Fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 886 (N.D. Cal. 2015) (holding that the same statement is not defamatory on its face). This authority dooms Plaintiff's nearly identical defamation claim in this case.

### 3.  Plaintiff's Breach of Contract Claim Fails

Plaintiff's breach of contract claim is apparently based on the implied covenant of good faith and fair dealing, rather than on the actual provisions of YouTube's Terms of Service. Compl. ¶ 95. But any such claim is defeated by express terms of the agreement.

Plaintiff contends that YouTube breached the governing Terms of Service when it removed Plaintiff's videos and terminated his channel. These actions are specifically authorized by the Terms of Service, under which YouTube may:

- "discontinue any aspect of the Service at any time," Adam Decl. Ex. 1 § 4.J;

- "remove Content without prior notice," *id.* § 6.F;
- "decide whether Content violates these Terms of Service for reasons other than copyright infringement," *id.* § 7.B.; and
- "at any time, without prior notice and at its sole discretion, remove such Content and/or terminate a user's account for submitting such material in violation of these Terms of Service," *id.*

In short, the very actions that Plaintiff now claims breached the implied covenant are ones that the agreement itself gives YouTube the right to perform. That rules out any invocation of the implied covenant. *See Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374 (1992) (where there are certain "acts and conduct authorized by the express provisions of the contract, no covenant of good faith and fair dealing can be implied which forbids such acts and conduct" (citation omitted)); *Falkowski v. Imation Corp.*, 132 Cal. App. 4th 499, 518 (2005) (It is a "fundamental rule that an implied contract cannot override the terms of an express agreement between the parties."); *accord Song Fi*, 108 F. Supp. 3d at 885 (dismissing nearly identical claim for breach of implied covenant).

What is more, Plaintiff's claim runs squarely into Section 10 of the agreement, which provides:

> IN NO EVENT SHALL YOUTUBE . . . BE LIABLE TO YOU FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES WHATSOEVER RESULTING FROM ANY . . . (IV) ANY INTERRUPTION OR CESSATION OF TRANSMISSION TO OR FROM OUR SERVICES, . . . AND/OR (V) [sic] ANY ERRORS OR OMISSIONS IN ANY CONTENT OR FOR ANY LOSS OR DAMAGE OF ANY KIND INCURRED AS A RESULT OF YOUR USE OF ANY CONTENT POSTED, EMAILED, TRANSMITTED, OR OTHERWISE MADE AVAILABLE VIA THE SERVICES.

Adam Decl. Ex. 1 § 10. This limitation-of-liability provision is fully enforceable under California law. *See Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118, 1125-26 (2012)  (limitation-of-liability clauses like Section 10 "have long been recognized valid in California" (citation omitted)). Courts—including both the California Court of Appeal and the Ninth Circuit—have repeatedly enforced this exact provision to dismiss similar breach of implied covenant claims brought by YouTube users. *See Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118,

125 (2015); *Darnaa, LLC v. Google Inc.*, 236 F. Supp. 3d 1116, 1125 (N.D. Cal. 2017), *aff'd*, --- F. App'x ----, 2018 WL 6131133 (9th Cir. Nov. 21, 2018).[7]

## II.   PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE THEY ARE BARRED BY FEDERAL LAW

Even if Plaintiff had pleaded facts sufficient to state a claim under federal or state law, however, his claims would run headlong into two overarching federal immunities: the First Amendment and Section 230 of the CDA. These immunities preclude liability for YouTube's decisions about what videos can appear on its platform and thus bar, as a matter of law, Plaintiff's claims under the Virginia Constitution, the Telecommunications Act, the breach of the implied covenant, and any bid for injunctive relief.

### A.   Plaintiff's Claims Are Barred by the First Amendment

To begin, while Plaintiff (as discussed above) cannot invoke the First Amendment against YouTube because it is not a state actor, YouTube is protected by the First Amendment against claims that seek to hold it liable for its editorial judgments. The First Amendment protects "the exercise of editorial control and judgment" by those who publish or provide a platform for the speech of others. *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974). This protection for editorial judgments includes decisions about how and whether to present third-party speech. *See, e.g.*, *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 636 (1994) (cable operators engage in protected "editorial discretion" by selecting television programming). It applies fully to the editorial choices made by online service providers. *See, e.g.*, *Zhang v. Baidu.com, Inc.*, 10 F. Supp. 3d 433, 441 (S.D.N.Y. 2014) (search engine protected by First Amendment for excluding search results); *e-ventures Worldwide, LLC v. Google, Inc.*, No. 2:14-cv-646-FtM-PAM-CM, 2017 WL 2210029, at *4 (M.D. Fla. 2017) (same).

These principles bar Plaintiff's claims. Plaintiff seeks to hold Google and YouTube liable for what he claims are their politically motivated decisions not to allow Plaintiff to post certain

---

[7] Plaintiff's final cause of action—for a permanent injunction—fails because injunctive relief is a remedy and not a separate cause of action. *See, e.g.*, *SFJ*, 144 F. Supp. 3d at 1090; *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010).

1   kinds of video content on YouTube. These are exactly the kinds of decisions that the First

2   Amendment protects. They are analogous to decisions made by publishers in selecting the

3   "material to go into a newspaper" including the "treatment of public issues and public officials."

4   *Tornillo*, 418 U.S. at 258; *accord e-ventures*, 2017 WL 2210029, at *4 ("determining whether

5   certain websites are contrary to Google's guidelines and thereby subject to removal are the same

6   as decisions by a newspaper editor regarding which content to publish, which article belongs on

7   the front page, and which article is unworthy of publication").

8       The First Amendment does not allow Plaintiff to countermand YouTube's editorial

9   judgments—and to direct the content that appears on YouTube—by ordering Defendants to

10   reinstate his account or publish videos that YouTube has determined violate its standards. *Accord*

11   *Denver Area Educ. Telecomms Consortium, Inc. v. FCC*, 518 U.S. 727, 737-38 (1996) (plurality

12   opinion) (because "the editorial function itself is an aspect of 'speech,' and a court's decision

13   that a private party, say, the station owner, is a 'censor,' could itself interfere with that private

14   'censor's' freedom to speak as an editor" (citation omitted)); *Langdon v. Google, Inc.*,

15   474 F. Supp. 2d 622, 629-30 (D. Del. 2007) (First Amendment prohibits order compelling search

16   engines to "'honestly' rank Plaintiff's websites").

17       This First Amendment protection is especially strong in this case, given the Complaint's

18   wholly unfounded allegations that YouTube removed Plaintiff's videos because it disagreed with

19   their political message. *See, e.g.*, *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995)

20   (judgments reflecting political speech are at the "core of the protection afforded by the First

21   Amendment"). To hold YouTube liable for making what Plaintiff characterizes as political

22   determinations "would plainly 'violate[] the fundamental rule of protection under the First

23   Amendment, that a speaker has the autonomy to choose the content of his own message.'"

24   *Zhang*, 10 F. Supp. 3d at 440 (alteration in original) (citation omitted).

25       **B.    Plaintiff's Claims Are Barred by Section 230 of the CDA**

26       Reinforcing the First Amendment's protection is Section 230(c)(1) of the Communications

27   Decency Act. This provision bars any claim that would treat the provider of an "interactive

28   computer service" "as the publisher or speaker of any information provided by another

---

1    information content provider." 47 U.S.C. § 230(c)(1). Section 230 "overrides the traditional

2    treatment of publishers, distributors, and speakers under statutory and common law." *Batzel v.*

3    *Smith*, 333 F.3d 1018, 1026 (9th Cir. 2003). It does so by creating "a federal immunity" that

4    "precludes courts from entertaining claims that would place a computer service provider in a

5    publisher's role. Thus, lawsuits seeking to hold a service provider liable for its exercise of a

6    publisher's traditional editorial functions—such as deciding whether to publish, withdraw,

7    postpone or alter content—are barred." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir.

8    1997); *see also Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009).

9         Because Section 230 is meant to protect websites from "having to fight costly and

10   protracted legal battles," *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,

11   521 F.3d 1157, 1175 (9th Cir. 2008) (en banc), courts aim to "resolve the question of § 230

12   immunity at the earliest possible stage of the case," *Nemet Chevrolet, Ltd. v.*

13   *Consumeraffairs.com, Inc.*, 591 F.3d 250, 254-55 (4th Cir. 2009). Court routinely apply the statute

14   to dismiss at the pleading stage (and with prejudice) claims arising from a service provider's

15   decisions about how to manage third-party content on its platform. *See Barnes*, 570 F.3d at 1102;

16   *Bennett v. Google, LLC*, 882 F.3d 1163, 1166 (D.C. Cir. 2018); *accord Goddard v. Google, Inc.*,

17   640 F. Supp. 2d 1193, 1202 (N.D. Cal. 2009); *Lancaster v. Alphabet*, Inc., No. 15-cv-05299-HSG,

18   2016 WL 3648608 (N.D. Cal. July 8, 2016).

19        Section 230 mandates dismissal where: (1) the defendant is a provider or user "of an

20   interactive computer service"; (2) the relevant material was "provided by another information

21   content provider"—that is, by someone other than the defendant; and (3) the plaintiff seeks to hold

22   the defendant liable as the "publisher or speaker" of the information. 47 U.S.C. § 230(c)(1);

23   *accord Barnes*, 570 F.3d at 1100 (laying out three-part test for Section 230 immunity). Each of

24   these conditions is met here, and Plaintiff's claim against Google must be dismissed. *Accord Sikhs*

25   *for Justice "SFJ," Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1092-93 (N.D. Cal. 2016)

26   ("SFJ"), *aff'd*, 697 F. App'x 526 (9th Cir. 2017) (applying three-part test to dismiss claims based

27   on removal of plaintiff's Facebook page).

28

On the first element, Google and YouTube are paradigmatic "interactive computer service" providers, *see* Compl. ¶¶ 15, 18, and have been found to be such in countless cases. *See, e.g.*, *Bennett*, 882 F.3d at 1167 ("[A]s many other courts have found, Google qualifies as an "interactive computer service" provider because it "provides or enables computer access by multiple users to a computer server."); *Gonzalez v. Google, Inc.*, 282 F. Supp. 3d 1150, 1163 (N.D. Cal. 2017) (no dispute that YouTube was interactive computer service provider); *Lancaster*, 2016 WL 3648608, at *3 (same, and citing additional cases).

The second element is also readily satisfied here. Plaintiff seeks to hold YouTube liable for the removal of videos created and posted by Plaintiff: information provided by "another information content provider." *SFJ*, 144 F. Supp. 3d at 1094 (holding that second element satisfied in similar case where Facebook removed plaintiff's own content); *Lancaster*, 2016 WL 3648608 (same, where YouTube removed plaintiff's videos). The Complaint does not allege that YouTube played any part in the "creation or development" of any of Plaintiff's videos—nor could it. *See Roommates.com*, 521 F.3d at 1162 (when website operator merely displays content created entirely by third parties, it is a service provider); *Klayman v. Zuckerberg*, 753 F.3d 1354, 1358 (D.C. Cir. 2014) ("a website does not create or develop content when it merely provides a neutral means by which third parties can post information of their own independent choosing online"); *Kimzey v. Yelp! Inc*., 836 F.3d 1263, 1271 (9th Cir. 2016) ("Simply put, proliferation and dissemination of content does not equal creation or development of content.").

Finally, Plaintiff's claims seek to hold YouTube liable for deciding to remove Plaintiff's videos from the platform—that is, in YouTube's capacity as "publisher" of user-created content. The Complaint alleges that Defendants violated federal and state law by "censor[ing]" or "purg[ing]" videos posted by Plaintiff on the basis of their politically conservative content. *E.g.*, Compl. ¶¶ 5, 11, 41-42, 53, 59. Accepting those unfounded allegations as true for purposes of this motion, such decisions about "whether to publish, *withdraw*, postpone or alter content" are exactly what Section 230 protects. *Zeran*, 129 F.3d at 330 (emphasis added); *accord Barnes*, 570 F.3d at 1102 ("[P]ublication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content."). As the Ninth Circuit explained, "any activity that can be

1   boiled down to deciding whether to exclude material that third parties seek to post online is

2   perforce immune under section 230." *Roommates.com*, 521 F.3d at 1170-71.

3        Courts in this district thus have consistently applied Section 230(c)(1) to reject claims

4   brought against online service providers by plaintiffs who have had their content removed from

5   such services. *See, e.g.*, *Lancaster*, 2016 WL 3648608, at *3 (dismissing claims based on

6   YouTube's removal of plaintiff's videos because "to impose liability on the basis of such

7   conduct necessarily involves treating the liable party as a publisher" (citation omitted)); *SFJ*,

8   144 F. Supp. 3d 1088, 1095 (N.D. Cal. 2015) (holding that Facebook's blocking of plaintiff's

9   page is "publisher conduct immunized by the CDA"). As in those cases, the premise of

10  Plaintiff's claims is that YouTube removed his content. "But removing content is something

11  publishers do, and to impose liability on the basis of such conduct necessarily involves treating

12  the liable party as a publisher." *Barnes*, 570 F.3d at 1103. As a matter of law, such claims are

13  barred by Section 230.

14  **CONCLUSION**

15       Plaintiff's claims fail to state a viable cause of action and are barred by federal law. For

16  these reasons, Plaintiff's Complaint should be dismissed with prejudice.

17

18  Dated: June 5, 2019             Respectfully submitted,

19

20                        /s/ Brian M. Willen

21                        BRIAN M. WILLEN (admitted *pro hac vice*)
    bwillen@wsgr.com

22                        WILSON SONSINI GOODRICH & ROSATI, P.C.
    1301 Avenue of the Americas
    40th Floor

23                        New York, New York 10019-6022
    Telephone: (212) 999-5800

24                        Facsimile: (212) 999-5899

25

26

27

28

1

**CERTIFICATION REGARDING MEET AND CONFER REQUIREMENT**

2

I hereby certify that the parties have complied with the meet and confer requirement of

3

Section 4 of this Court's Standing Order.

4

5

/s/  Brian M. Willen

6

BRIAN M. WILLEN (admitted *pro hac vice*)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28